UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

JUDITH A. HOCKSTEDLER,       )
                             )
          Plaintiff,         )
                             )
v.                           )       No. 4:20-CV-025-DCP
                             )
KILOLO KIJAKAZI[1],          )
Acting Commissioner of Social Security,  )
                             )
          Defendant.         )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 15]. Now before the Court are Plaintiff's Motion for Judgment on the Pleadings [Doc. 13] and Defendant's Motion for Summary Judgment [Doc. 16]. Judith A. Hockstedler ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

## I.     PROCEDURAL HISTORY

On September 3, 2014, Plaintiff protectively filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*., claiming a period of disability that began on August 10, 2012. [Tr. 122–23, 134]. Plaintiff requested a hearing after her claim was denied initially [Tr. 134] and upon reconsideration [Tr. 154]. A hearing was held before ALJ Frederick McGrath on June 26, 2017. [Tr. 101–21]. On September 18, 2017, ALJ

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration ("the SSA") on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit. *See* 42 U.S.C. § 405(g).

McGrath found that Plaintiff was not disabled. [Tr. 158–66]. However, the Appeals Council remanded the matter for further proceedings on April 6, 2018. [Tr. 173–75].

ALJ McGrath held a second hearing on September 4, 2018. [Tr. 68–100]. After ordered x-rays were not completed, ALJ McGrath scheduled another hearing, which was held on February 4, 2019. [Tr. 46–66]. On April 11, 2019, ALJ McGrath again found that Plaintiff was not disabled. [Tr. 15–38]. The Appeals Council denied Plaintiff's request for review on April 6, 2020 [Tr. 1–5], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on June 8, 2020, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

1.    The claimant last met the insured status requirements of the Social Security Act on December 31, 2017.

2.    The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 10, 2012 through her date last insured of December 31, 2017 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: osteoarthritis, hypertension, and obesity (20 CFR 404.1520(c)).

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could perform frequent bilateral fine and gross manipulation, lifting, carrying, pushing, pulling, and all other hand functions.

6. Through the date last insured, the claimant was capable of performing past relevant work as an automotive parts purchaser, Dictionary of Occupation Titles (DOT) code 249.367-058, light exertional level as defined by the DOT, sedentary exertional level as performed, skilled Specific Vocational Preparation (SVP) 5. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, from August 10, 2012, the alleged onset date, through December 31, 2017, the date last insured (20 CFR 404.1520(f)).

[Tr. 18–37].

## III.     STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different

3

conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV.    DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

4

than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

5

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.    ANALYSIS

Plaintiff asserts that the ALJ's disability determination is not supported by substantial evidence because the ALJ's finding that her mental health impairments were non-severe at Step Two is not supported by substantial evidence. Additionally, Plaintiff claims that the ALJ did not support his subjective complaint analysis with substantial evidence. The Court will address Plaintiff's allegations of error in turn.

### A.    Severe Impairments

Plaintiff claims that the ALJ improperly found that her mental health impairments were not severe at Step Two of the sequential evaluation. After remand from the Appeals Council, the ALJ reviewed an extensive medical record with respect to Plaintiff's mental impairments, which consisted of numerous years of treatment notes and several medical opinions. The ALJ's disability decision sets forth in great detail the medical record with respect to Plaintiff's mental impairments, and Plaintiff does not claim that the ALJ failed to discuss any applicable opinion or portion of the medical record.[2] Therefore, the Court will briefly summarize the relevant portions of the medical record that the ALJ relied upon in the disability decision.

---

[2] The parties' briefing also extensively reviews the opinions and treatment notes regarding Plaintiff's mental impairments.

6

### 1.    Background

Plaintiff underwent a consultative neuropsychological evaluation on September 6, 2012 with Leslie Jones, Ph.D. [Tr. 486]. The ALJ reviewed the evaluation findings in great detail and noted that "[t]here was evidence that the claimant consistently endorsed items that would portray her in an especially negative or pathological manner, and her PAI clinical profile was marked by significant elevations across a number of different scales." [Tr. 19]. In pertinent part, Dr. Jones obtained Plaintiff's background information, performed a behavioral observation and mental status examination, conducted the Wechsler Adult Intelligence Scale-3rd edition ("WAIS-3"), conducted the California Verbal Learning Test-2nd edition and Wechsler Memory Scale Revised to test Plaintiff's memory functions, conducted the Boston Naming Test to evaluate Plaintiff's language function, conducted the Trail Making A Test to assess Plaintiff's visuomotor and executive functions, and administered the Personality Assessment Inventory to evaluate Plaintiff's affect and personality. [Tr. 486–88]. Dr. Jones diagnosed mild cognitive impairment, bipolar II disorder, and borderline and avoidant personality disorder traits. [Tr. 488]. The ALJ further noted that Dr. Jones opined that:

> Current neuropsychological evaluation results showed some mild executive functioning deficits in an individual of low average overall intellectual ability. It is likely that these executive functioning deficits are the cause of Ms. Hockstedler's perceived memory loss, and that the executive functioning deficits, in turn, are caused by her mood and personality disorders. However—she did show impairment in delayed visual recall; her forgetfulness about recent events and conversations is troubling; it appears that her daily functioning has been compromised by recent changes in her cognitive skills; and it is unclear why she seems to have experienced a sudden worsening of symptoms. Therefore, she is tentatively being given a diagnosis of Mild Cognitive Impairment . . . If her forgetfulness continued, she should be re-assessed . . . It will then become clearer whether she actually has a progressive dementia. Ms. Hockstedler's more salient diagnoses at this time involve her psychiatric conditions, and those should continue to be the focus of treatment. She has an intense fear of rejection and criticism, along with mood volatility and episodes of poorly controlled anger. These

7

symptoms are typical of bipolar II disorder combined with borderline and avoidant personality traits. She is in a great deal of distress, and seems to be seeking help and attention while being unsure how best to do that.

[Tr. 20]; *see* [Tr. 488–89].

Dr. Jones also performed a Medical Source Statement on October 29, 2012. [Tr. 483]. Dr. Jones opined that Plaintiff was mildly limited in the ability to understand, remember, and carry out simple instructions; that she was moderately limited in the ability to make judgments on simple work-related decisions, as well as understand, remember, and carry out complex instructions; and that Plaintiff was markedly limited in the ability to make judgments on complex work-related decisions. [*Id.*]. Further, Dr. Jones assessed that Plaintiff was mildly limited in the ability to interact appropriately with the public and supervisors; that she was moderately limited in the ability to interact with co-workers; and that she was markedly limited in the ability to respond appropriately to usual work setting and to changes in a routine work setting. [Tr. 484].

Next, the ALJ proceeded to review Plaintiff's treatment record at Tullahoma Psychiatric with Allen Craig, M.D., including by reviewing Plaintiff's presentation at appointments, the effect of her prescribed medication, and mental status examination findings. [Tr. 20]. The ALJ then detailed Plaintiff's consultative psychological evaluation on December 16, 2015 with Tamara Raphaeli, Psy.D. [Tr. 22]. Dr. Raphaeli reviewed Plaintiff's function report and her examination with Dr. Jones, as well as conducted a clinical interview and performed a mental status examination. [Tr. 516]. Dr. Raphaeli assessed that Plaintiff "appears to fall into the low average range of intellectual functioning," that she showed evidence of mild impairment in her short-term memory and ability to sustain concentration, but that she showed no evidence of impairment in her long-term and remote memory functioning. [Tr. 519–20]. Further, Dr. Raphaeli found that Plaintiff's current psychiatric state was anxious, she showed no evidence of impairment in social

8

relating or her ability to adapt to change, that she appeared able to follow instructions, and that she had a long history working in a factory. [Tr. 520]. Dr. Raphaeli therefore diagnosed unspecified depressive disorder and Bipolar II disorder (by history). [*Id.*].

After detailing Dr. Raphaeli's opinion, the ALJ further discussed Plaintiff's treatment notes with Dr. Craig, including a mental status examination from February 26, 2016. [Tr. 22]. Dr. Craig completed a Medical Source Statement, where he noted that he treated Plaintiff for panic disorder and unspecified mood disorder, as well as that Plaintiff would miss more than two days per month of work due to anxiety. [Tr. 522–23]. The ALJ summarized Dr. Craig's opinion as assessing "mild to moderate limitations in the claimant's functional abilities." [Tr. 23].

The ALJ then reviewed Plaintiff's second neuropsychological evaluation on March 1, 2016 with Dr. Jones. [Tr. 23–24]. Dr. Jones conducted largely the same assessments and diagnosed mild cognitive impairment, major depression, recurrent, severe, bipolar II disorder, and borderline and dependent personality traits. [Tr. 538]. Dr. Jones summarized that:

> Ms. Hockstedler's current neuropsychological evaluation results showed mild deficits in concentration and processing speed, and severe deficits on some, but not all, of the verbal memory testing. She has had a mild decline in those areas since her previous evaluation three and a half years ago. The rest of her results were predominantly in the low average to average range and consistent with her previous results. She has not shown the rate and type of decline which would be typical of Alzheimer's type dementia. She could possibly be developing a frontotemporal dementia. She also continues to have a significant mood disorder, which could certainly be having an adverse impact on her memory and concentration. Another possibility is that Ms. Hockstedler has a previously undiagnosed attention deficit disorder which has gotten worse due to stress and her psychiatric illness. I hesitate to recommend any additional medication since she already takes quite a few, but perhaps she could have a trial of ADD medication. If that proves helpful to her, it might also benefit her mood.
>
> Ms. Hockstedler remains independent in most of her activities of daily living; although she has become increasingly dependent on her husband for driving, financial matters, and emotional support. Because the etiology of Ms. Hockstedler's cognitive impairments remains unclear even after four years, it is

9

recommended that she have a brain scan if she has not had one . . . [and] also recommended that she resume counseling.

[*Id.*].  The ALJ proceeded to describe more of Plaintiff's treatment records, including in September and November 2016, as well as February 10, May 5, July 28, and October 20, 2017.  [Tr. 24].

Plaintiff was again evaluated by Dr. Jones on August 8, 2017.  [Tr. 571–72].  As noted by the ALJ, "Dr. Jones again administered a battery of tests" and Plaintiff's "results improved on some tests and declined in others."  [Tr. 25].  The ALJ further summarized Dr. Jones' evaluation as Plaintiff's "test results at her three evaluations had been inconsistent and not clearly indicative of any particular type of dementia."  [*Id.*].  Additionally, Dr. Jones found that "it still seems most likely that [Plaintiff's] cognitive impairments are due to her psychiatric illness and medications" and "because her visuomotor skills and her tremors appear to have worsened, it might be good to obtain a neurological consultation and a brain MRI," as well as attempt to decrease some of her medication.  [Tr. 572].  Lastly, Dr. Jones opined that Plaintiff's "neuropsychological evaluation results showed moderate impairment in visuomotor/spatial skills and executive functions (processing speed, mental flexibility), as well as "mild impairment in memory and naming."  [*Id.*].

Plaintiff underwent an additional consultative examination with Dr. Raphaeli on May 8, 2018.  [Tr. 555–61].  Dr. Raphaeli assessed that Plaintiff "appears to fall into the average range of intellectual functioning," as well as that she showed evidence of mild impairment in her short-term memory and ability to sustain concentration, and evidence of impairment in her long-term and remote memory functioning.  [Tr. 558].  Additionally, Dr. Raphaeli found that Plaintiff's current psychiatric state was anxious, that she showed evidence of a mild impairment in her social relating, appeared to be mildly impaired in her ability to adapt to change, and appeared to be able to follow both written and spoken instructions.  [*Id.*].  Therefore, Dr. Raphaeli opined that Plaintiff was not

10

limited in the ability to make judgments on simple-work related decisions, as well as carry out complex instructions; but that she was mildly limited in the ability to understand, remember, and carry out simple instructions, understand and remember complex instructions, and make judgments on complex work-related decisions.[3] [Tr. 559].

On October 8, 2018, Plaintiff underwent an additional consultative psychological evaluation with Jerry Campbell, Psy.D. [Tr. 604–11]. In pertinent part, Dr. Campbell assessed that Plaintiff "appears to fall into the average range of intellectual functioning," showed evidence of mild to moderate impairment in her short-term memory and ability to sustain concentration, as well as showed evidence of mild impairment in her long-term and remote memory functioning. [Tr. 608]. Dr. Campbell also completed a Medical Source Statement which assessed mild limitations in the ability to understand, remember, and carry out simple instructions; in addition to moderate limitations in the ability to understand, remember, and carry out complex instructions, make judgments on complex work-related decisions.[4] [Tr. 609].

Dr. Craig then completed a second Medical Source Statement on October 22, 2018. [Tr. 614–16]. The ALJ noted that Dr. Craig indicated that he treated Plaintiff for chronic anxiety and depression and opined that Plaintiff "would miss more than two days per month of work due to her anxiety, and her anxiety would probably increase in a fulltime employment setting," as well as that Plaintiff would be off task thirty percent of the workday. [Tr. 27–28]. Additionally, Dr. Craig

---

[3] While it is perplexing that Dr. Raphaeli noted on the check-box form that Plaintiff was not limited in the ability to carry out complex instructions but mildly limited in the ability to carry out simple instructions, the corresponding narrative summary by Dr. Raphaeli generally concludes that "[Plaintiff] appears able to follow instructions, both written and spoken." [Tr. 558].

[4] Dr. Campbell assessed both mild and moderate limitations concerning Plaintiff's ability to make judgments on complex work-related decisions. [*Id.*].

opined that Plaintiff was moderately limited in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, complete a normal workweek without interruptions from psychologically based symptoms, and tolerate normal levels of stress. [Tr. 614–16]. However, Dr. Craig found that Plaintiff was either mildly or not limited in the remainder of her abilities related to understanding and memory, sustained concentration and persistence, social interaction, and adaption. [*Id.*].

Therefore, the ALJ found that Plaintiff's "medically determinable impairments of anxiety disorder and bipolar disorder, considered singly and in combination do not cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore nonsevere." [Tr. 28]. First, the ALJ found that Plaintiff had mild limitations in understanding, remembering, or applying information. [*Id.*]. Here, the ALJ noted that Plaintiff had undergone numerous psychological and neuropsychological evaluations, but "the results of testing have varied significantly," and Plaintiff did not pursue therapy or obtain a brain MRI as recommended by Dr. Jones. [*Id.*]. Additionally, the ALJ found "throughout the treatment records from her treating psychiatrist, Dr. Craig, no deficits in cognitive function were noted; the claimant's mental status evaluation was consistently normal with only occasional anxiety or depression noted; and the claimant consistently reported that her medication[s] were working well and controlling her mood." [Tr. 28–29]. The ALJ cited to Plaintiff's consultative examinations with Dr. Raphaeli finding mild impairment in Plaintiff's short-term memory and ability to sustain concentration, while no impairment in her long-term and remote memory functioning. [Tr. 29].

Ultimately, while the ALJ noted that Dr. Jones' evaluations "indicated potential deficits in the claimant's memory," the ALJ found that her treatment record did not support more than mild

12

limitations in Plaintiff's ability to understand, remember and apply information. [*Id.*]. Similarly, the ALJ found that while Dr. Campbell assessed mild to moderate limitations in Plaintiff's memory and her ability to understand and remember information, his examination notes did not support the assessed limitations. [*Id.*].

Second, the ALJ found that Plaintiff had mild limitations in interacting with others. [*Id.*]. In support, the ALJ assessed that Plaintiff interacted appropriately with her physicians, "was almost exclusively noted to be alert and fully oriented during examination," and Dr. Raphaeli opined that Plaintiff showed no evidence of impairment in social relating during her first evaluation and mild impairment in her second evaluation. [*Id.*]. The ALJ acknowledged Dr. Campbell's assessed moderate limitations in social interaction but contrasted that opinion with his notation that she was cooperative throughout the evaluation, maintained good eye contact, as well as reported daily activities of going grocery shopping weekly, and interacting with family regularly. [*Id.*]. Further, the ALJ acknowledged Dr. Craig's assessed moderate limitations in social interaction in his 2016 Medical Source Statement but found that Dr. Craig's "treatment notes reflect no reports of difficulty interacting with others, and by October 2018, Dr. Craig assessed only mild limitation in the claimant's ability to accept instructions and respond appropriately to criticism from supervisions." [Tr. 29–30].

Third, the ALJ found that Plaintiff also had only mild limitations in concentrating, persisting, or maintaining pace. [Tr. 30]. The ALJ reviewed Plaintiff's reported daily activities, including that she "reported no difficulty performing housework, performing yard work, or preparing meals." [*Id.*]. Additionally, the ALJ summarized that "[d]uring Dr. Jones' 2012 evaluation, [Plaintiff] showed relative strength on subtests assessing sustained concentration and nonverbal reasoning ability," that Dr. Raphaeli assessed mild impairment in Plaintiff's ability to

13

sustain concentration in 2015 and 2018, and that Dr. Jones opined in 2016 that Plaintiff's neuropsychological evaluation results showed mild deficits in concentration and processing speed. [*Id.*]. The ALJ stated that Dr. Campbell opined mild to moderate impairment in this ability, but there were no concentration difficulties mentioned in his evaluation notes, as well as that Plaintiff's treatment notes with Dr. Craig failed to document complaints of concentration difficulties. [*Id.*].

Lastly, the ALJ found that Plaintiff had only mild limitations in adapting or managing oneself. [*Id.*]. The ALJ cited to examination findings that Plaintiff was able to remain independent in her activities of daily living and "[t]hroughout the record, [Plaintiff] reported that she was able to drive, prepare simple meals, wash dishes, sweep, vacuum, wash laundry, and perform yard work." [*Id.*]. The ALJ noted Dr. Craig's 2016 opinion that Plaintiff exhibited moderate limitations in her ability to respond appropriately to changes in the work setting but distinguished this with his later opinion that Plaintiff "exhibited only mild limitations in this area of functioning." Accordingly, "[b]ecause [Plaintiff's medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas," the ALJ found these impairments to be nonsevere. [*Id.*].

In the RFC determination, the ALJ found that Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms . . . are inconsistent because the treatment record as a whole does not support her level of limitation alleged." [Tr. 32]. Specifically, the ALJ noted that while Plaintiff "has a long history of complaints of memory problems, despite extensive testing and mental health treatment, no diagnoses [have] been made that would account for the claimant's reported memory issues." [*Id.*]. Additionally, the ALJ reviewed how Plaintiff's "performance on neuropsychological testing has varied significantly." [*Id.*].

14

The ALJ found that "[w]hile looking only to Dr. Jones' evaluations, it would be easy to infer that the claimant has significant psychological limitations, the results of Dr. Jones' testing and her opinions are not supported by the record as a whole." [*Id.*]. Specifically, the ALJ reviewed that Plaintiff "is consistently noted to be doing well on medication" throughout her treatment records with Dr. Craig, and that she "occasionally reported increased anxiety or depression, usually related to external stressors . . . however, her mood would quickly stabilize, and her mental status examinations would return to normal." [*Id.*]. Additionally, the ALJ cited to Dr. Raphaeli's consultative examinations finding "no evidence of greater than mild psychological limitations." [Tr. 32–33].

While reviewing the opinion evidence, the ALJ assigned "little weight to the opinions of the State Agency psychological consultants who found affective disorders and anxiety disorders severe," as while Plaintiff "has had long-term mental health treatment, extensive neuropsychological testing has no[t] yielded any consistent results, the claimant's mental health treatment indicates that her mental health symptoms have been consistently well controlled with medication, and the claimant has not followed through on multiple recommendations to obtain mental health counselling [sic] or a brain MRI." [Tr. 33]. The ALJ also stated that the consultants did not personally examine Plaintiff or review a complete medical record. [*Id.*].

The ALJ proceeded to review Dr. Jones' opinions and afforded them some weight, finding that the limitations varied from exam to exam and "during the final evaluation, Dr. Jones opined that the claimant's reported limitations may be caused by her medication." [Tr. 34]. The ALJ afforded significant weight to Dr. Raphaeli's opinions, as "her opinion that the claimant exhibits no more than mild limitations is consistent with the treatment record as a whole, which indicates that her psychological impairments are well controlled with medication." [Tr. 35]. Next, the ALJ

15

afforded little weight to Dr. Campbell's opinion, finding the opinion was inconsistent with "his own examination notes, Dr. Raphaeli's examination notes, and Dr. Craig's treatment notes." [Tr. 36]. Lastly, the ALJ gave "little weight to the assessments provided by Dr. Craig, as they are not supported by his own treatment notes or the other notes in the file." [*Id.*]. After extensively reviewing again Dr. Craig's treatment notes, the ALJ found that "[a]t no point in his treatment records does Dr. Craig discuss limitations consistent with those he assessed on the medical source statements." [Tr. 37]. Additionally, the ALJ noted that "the other evaluations performed by Dr. Raphaeli exhibit no more than mild limitations in the claimant's functional abilities." [*Id.*].

## 2. Analysis

At step two, the ALJ is required to consider whether Plaintiff's alleged impairments constitute "medically determinable" impairments. *See* 20 C.F.R. §§ 404.1508; 416.920(a)(4)(ii); 404.1520(a)(4)(ii). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques," and "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. §§ 404.1508; 416.908. Additionally, an impairment must meet the durational requirement, meaning, "it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509.

To be found disabled, "the ALJ must find that the claimant has a severe impairment or impairments" at step two. *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88 (6th Cir. 1985). An impairment, or combination of impairments, will be found severe if the impairment(s) "significantly limit[ ] [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The step two determination is "a de minimis hurdle" in that "an impairment

16

will be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Brown*, 880 F.2d 860, 862 (6th Cir. 1988) (citing *Farris*, 773 F.2d at 90). "A severe mental impairment is 'established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a plaintiff's] statement of symptoms.'" *Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 559 (6th Cir. 2014) (quoting 20 C.F.R. § 416.908).

At the outset, the Court will address Plaintiff's argument that the ALJ's finding that her mental health impairments were nonsevere at Step Two is not supported by substantial evidence. Although the Step Two determination is a de minimis hurdle, the Court finds that substantial evidence supports the ALJ's decision, as he first reviewed the medical record in great detail regarding Plaintiff's mental impairments. The ALJ found that Plaintiff's longstanding treatment record with Dr. Craig, as well as the medical opinions of record, did not support more than mild limitations in area of the four broad areas of mental functioning, and as a whole, Plaintiff's anxiety disorder and bipolar disorder did not cause more than minimal limitation in Plaintiff's ability to perform basic work activities. [Tr. 28]. *See, e.g.*, *Church v. Saul*, No. 2:18-CV-36-HBG, 2019 WL 3070313, at *9 (E.D. Tenn. July 12, 2019) (finding substantial evidence supported the ALJ's finding that Plaintiff's depression was a nonsevere impairment where the ALJ noted that Plaintiff's treatment records demonstrated a history of depression aggravated by alcohol abuse, that Plaintiff's depressive symptoms were conservatively treated and well-managed with medication, and that Plaintiff's depression did not cause more than minimal limitations in the ability to perform basic mental work related activities); *Knox v. Colvin*, No. 2:16CV155-TFM, 2016 WL 6897791, at *4 (M.D. Ala. Nov. 22, 2016) (finding substantial evidence supported the Commissioner's finding that the claimant's anxiety and depression did not constitute severe mental impairments

17

where the conditions were treated conservatively and the ALJ found that the claimant had only mild limitations in the paragraph B criteria). Ultimately, "disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (citing *Higgs*, 880 F.2d at 863).

Plaintiff claims that "the ALJ unduly dismissed Dr. Jones' analysis, which was supported by testing and which concurred with treating opinions, an examining opinion, and the non-examining opinions." [Doc. 14 at 14]. Additionally, Plaintiff submits that "[u]nadorned raw data from clinical notes and the opinion of one of two consultative examiners does not substantially contradict these sources that support finding [her] medical impairments severe." [*Id.*]. However, the Court finds that the ALJ reasonably considered and weighed the medical opinion evidence in reaching his step-two conclusions. Plaintiff does not support her argument that the ALJ could not find that Dr. Raphaeli's opinions, as well as Dr. Craig's treatment notes, conflicted with Dr. Craig's opinions, Dr. Jones' opinions, Dr. Campbell's opinion, and the opinions of the nonexamining state agency consultants. Ultimately, the ALJ weighed the medical opinions, as well as cited to specific treatment notes exhibiting medication controlling Plaintiff's symptoms and normal mental status findings. [Tr. 29–30]. Additionally, the ALJ noted that despite Dr. Jones' recommendations, Plaintiff did not pursue therapy or obtain a brain MRI. [Tr. 28–29].

Further, even if the ALJ erred by failing to find Plaintiff's anxiety disorder and bipolar disorder severe impairments, it is well settled that the ALJ's failure to identify some impairments as "severe" is harmless where the ALJ continues the disability determination and considers both severe and nonsevere impairments at subsequent steps of the sequential evaluation as required by the regulations. *See Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) ("And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an

18

ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'") (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.").

In the RFC determination, the ALJ again extensively reviewed Plaintiff's mental impairments. *Cf. Bacon v. Saul*, No. 3:19-CV-183-HBG, 2020 WL 4923957, at *9 (E.D. Tenn. Aug. 21, 2020) ("However, the disability decision does not contain any indication that the ALJ considered Plaintiff's nonsevere mental impairments past Step Two of the sequential evaluation. Other than the brief mention detailed above, the ALJ failed to explain why Plaintiff's anxiety disorder did not result in any work-related limitations."); *Stephens v. Astrue*, No. 09-55-JBC, 2010 WL 1368891, at *2 (E.D. Ky. Mar. 31, 2010) ("The ALJ thoroughly examined the medical evidence of Stephens's mental impairments in arriving at her conclusion that they were not severe at the second step, but the fourth step, where the ALJ made findings regarding Stephens's RFC, was devoid of any explicit reference to those impairments.").

The ALJ discussed Plaintiff's testimony regarding her mental impairments and summarized that throughout Plaintiff's treatment with Dr. Craig, she was "consistently noted to be doing well on medication," as she "occasionally reported increased anxiety or depression . . . [but] her mental status examinations would return to normal." [Tr. 32]. Further, the ALJ reviewed the medical opinions of record with regard to Plaintiff's mental impairments and detailed why Dr. Craig's opinions, Dr. Jones' opinions, and Dr. Campbell's opinion were not supported by the medical record. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, No. 2:17-CV-1063, 2018 WL 5303060, at *5 (S.D. Ohio Oct. 25, 2018) (finding the ALJ "properly considered Plaintiff's mental

19

impairments in assessing her RFC and that substantial evidence supports the ALJ's decision to omit nonexertional limitations attributable to her mental impairments" where "[t]he ALJ thoroughly explained the grounds for his RFC determination, which included consideration of Plaintiff's allegations and hearing testimony, treatment history/lack of treatment history, the opinions of Drs. O'Connell, Tangeman, and Goldsmith, and a function-by-function discussion of the 'paragraph B' criteria"), *report and recommendation adopted by* 2018 WL 6271593 (S.D. Ohio Nov. 30, 2018). For example, when affording great weight to Dr. Rapheli's opinion that Plaintiff exhibited no more than mild limitations, the ALJ found that this opinion was "consistent with the treatment record as a whole, which indicates that her psychological impairments are well controlled with medication." [Tr. 35].

Ultimately, the ALJ's finding of mild limitations in the four areas of mental functioning did not require him to include mental limitations in Plaintiff's RFC. *See Ceol v. Berryhill*, No. 3:15–CV–315–CCS, 2017 WL 1194472, at *10 (E.D. Tenn. Mar. 30, 2017) ("Therefore, a finding by the ALJ that the Plaintiff has mild limitations in the areas of daily living activities, social functioning, and concentration, persistence, or pace, does not necessarily mean that the Plaintiff will have corresponding limitations with regard to her RFC."). "Accordingly, the Court's inquiry turns to whether substantial evidence supports the ALJ's determination not to include mental limitations in Plaintiff's RFC." *Fannin v. Berryhill*, No. 3:17-CV-236-DCP, 2019 WL 1434653, at *10–11 (E.D. Tenn. Mar. 29, 2019)

Plaintiff asserts that the ALJ improperly found that "while the claimant has a long history of complaints of memory problems, despite extensive testing and mental health treatment, no diagnoses [have] been made that would account for the claimant's reported memory issues." [Tr. 32]; *see* [Doc. 14 at 15]. However, the Court finds that the ALJ's conclusion referred to Dr. Jones'

20

August 8, 2017 opinion that Plaintiff's "test results at her three evaluations had been inconsistent and not clearly indicative of any particular type of dementia." [Tr. 572]. Additionally, Dr. Jones found that "it still seems most likely that [Plaintiff's] cognitive impairments are due to her psychiatric illness and medications" and "because her visuomotor skills and her tremors appear to have worsened, it might be good to obtain a neurological consultation and a brain MRI," as well as attempt to decrease some of her medication. [*Id.*]. While Plaintiff claims that the ALJ improperly focused on the presence of dementia, which she does not allege as a basis for disability, the Court finds that the ALJ reviewed the opinion of the consultative examiner that Plaintiff's memory problems were not attributable to any specific mental impairment.

Plaintiff claims that the ALJ improperly afforded great weight to the opinions of Dr. Raphaeli over those of Dr. Craig (her treating physician) and Dr. Jones (who conducted extensive testing). In considering a claim of disability, the ALJ generally must give the opinion of the claimant's treating physician "controlling weight." 20 C.F.R. §§ 404.1527(c); 416.927(c)(2).[5] However, a treating physician's opinion as to the nature and severity of an impairment must be given "controlling weight" only if it is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c); 416.927(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to the opinion will be determined based

---

[5] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as what is customarily known as the treating physician rule. As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies. *See id.* §§ 404.1527; 416.927.

21

upon the length of treatment, frequency of examinations, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. *Id.*

The ALJ is not required to explain how he considered each of these factors but must nonetheless give "good reasons" for giving a treating physician's opinion less than controlling weight. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); *see also Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (holding "good reasons" must be provided "that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight"). Opinions from non-treating sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. § 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These opinions are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Id.* (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). Ultimately, there is no rule that requires an articulation of each of these factors. *Albaugh v. Comm'r of Soc. Sec.*, No. 14-CV-10963, 2015 WL 1120316, at *6 (E.D. Mich. Mar. 11, 2015).

In the disability decision, the ALJ extensively reviewed the medical opinions of record and provided good reasons for why Dr. Craig's opinions were not afforded controlling weight, finding them inconsistent with his own treatment notes. [Tr. 36]. *See Fry v. Comm'r of Soc. Sec.*, 476 F. App'x 73, 75–76 (6th Cir. 2012) (concluding that the ALJ properly discounted the plaintiff's

22

treating psychiatrist's opinion as inconsistent with his own objective clinical findings in his treatment notes and other evidence in the record); *Dungey v. Comm'r of Soc. Sec.*, No. 1:12-CV-1190, 2014 WL 1232661, at *10 (W.D. Mich. Mar. 25, 2014) (concluding that the ALJ's decision to give less than controlling weight to the plaintiff's treating psychiatrist's opinion was supported by substantial evidence because the plaintiff "responded well to conservative treatment and demonstrated significant improvement when taking her medication as prescribed"). Importantly, the ALJ specifically detailed the treatment notes that he found inconsistent with Dr. Craig's opinions, such as that on October 22, 2018, the same day as Dr. Craig completed a Medical Source Statement, "Dr. Craig's treatment notes indicate that the claimant was doing well with her current psychiatric medication regimen" and "Dr. Craig noted that the claimant's affect was appropriate, and her mood was stable with no indication of hypomania, mania, or depression." [Tr. 36–37]. The ALJ also specifically found that Dr. Craig's opinion was inconsistent with Dr. Raphaeli's opinions. [Tr. 37]. *Cf. Wilson v. Berryhill*, No. 3:16-CV-95-HBG, 2017 WL 2790186, at *5 (E.D. Tenn. June 27, 2017) ("The ALJ does not identify with specificity any treatment records, examining findings, diagnostic studies, or other evidence that specifically undermines Dr. Laman's opinions. While the ALJ discussed the medical evidence of record in general, the Court is unable to determine how the ALJ arrived at his conclusion . . . .").

With respect to Dr. Jones' opinions, the Court finds that the ALJ appropriately detailed that he assigned some weight to the assessments but distinguished that "the limitations she assessed varied from exam to exam, and during the final evaluation, Dr. Jones opined that the claimant's reported limitations may be caused by her medication." [Tr. 34]. The ALJ also noted that Plaintiff's "treatment notes from Dr. Craig consistently noted that the claimant's mood was well

23

controlled with medication, and, aside from periodic anxiety and depression, the claimant's mental status examinations were largely normal." [*Id.*].

While Plaintiff claims that the ALJ improperly failed to find her mental impairments as severe, due to his finding of at least one severe impairment, Plaintiff more accurately challenges the RFC determination and the lack of functional limitations stemming from her mental health impairments. Ultimately, an ALJ is responsible for determining a claimant's RFC after reviewing all the relevant evidence of record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727–28 (6th Cir. 2013). The Court notes that although an ALJ is required to consider every medical opinion in the record, 20 C.F.R. § 404.1527(c), he is not bound to adopt any particular opinion when formulating a claimant's RFC. *See Rudd*, 531 F. App'x at 728. The ALJ is responsible for weighing medical opinions, as well as resolving conflicts in the medical evidence of record. *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *see also* 20 C.F.R. § 416.946(c) (stating the final responsibility for assessing a claimant's RFC rests with the ALJ). Here, the Court finds that the ALJ appropriately considered the medical opinions of record, as well as Plaintiff's mental impairments, but found that they caused no more than mild limitations. Therefore, the ALJ's failure to include limitations in the RFC stemming from Plaintiff's mental impairments does not constitute a basis for remand.

### B.    Subjective Symptom Evaluation

Plaintiff claims that the ALJ failed to support his evaluation of Plaintiff's subjective complaints with substantial evidence, as "the ALJ assessed Plaintiff's subjective complaint[s] by discussing Dr. Jones['] testing—which was flawed." [Doc. 14 at 23]. Plaintiff states that "Dr. Jones consistently noted that Plaintiff's performances on examinations were 'similar,'" and "[t]he label of somewhat inconsistent is specifically attached to dementia (T 572), which Plaintiff does

24

not allege." [*Id.*]. Lastly, Plaintiff claims that the ALJ failed to consider the potential plateauing of her condition before considering the effect of her treatment record.

The ALJ's decision postdates Social Security Ruling 16-3p, which eliminates the use of the term "credibility" from the applicable policy regulation and clarifies that a "subjective symptom evaluation is not an examination of an individual's character." 2016 WL 1119029, at *1 (Mar. 16, 2016); *see also Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-CV-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017) (noting that under SSR 16-3p, "an ALJ must focus on the consistency of an individual's statements about the intensity, persistence and limiting effects of symptoms, rather than credibility"), *report and recommendation adopted by* 2018 WL 494523 (S.D. Ohio Jan. 22, 2018). However, "[t]he two-step process and the factors ALJs consider when assessing the limiting effects of an individual's symptoms have not changed with the advent of SSR 16-3p." *Holder v. Comm'r of Soc. Sec.*, No. 1:17-CV-00186-SKL, 2018 WL 4101507, at *10 n.5 (E.D. Tenn. Aug. 28, 2018).

The ALJ is still tasked with first determining whether there is an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2016 WL 1119029, at *2–3. Then, the ALJ is responsible for determining the intensity, persistence, and limiting effects of an individual's symptoms, including assessing their: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning

25

an individual's functional limitations and restrictions due to pain or other symptoms. *Id.* at *4–8.

As stated above, in the disability decision, the ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent "because the treatment record as a whole does not support her level of limitation alleged," as "while the claimant has a long history of complaints of memory problems, despite extensive testing and mental health treatment, no diagnoses [have] been made that would account for the claimant's reported memory issues." [Tr. 32]. Further, the ALJ found that Plaintiff's "performance on neuropsychological testing has varied significantly," in addition to Dr. Jones' opinion "that it seemed most likely that the claimant's cognitive impairments were due to her psychiatric illness and medication side effects." [*Id.*]. Similarly, the ALJ noted that while Plaintiff reported increased tremors, no cause was established for the tremors and Plaintiff had minimal tremors present when preforming testing activities. [*Id.*]. Then, the ALJ summarized his finding by stating that "[w]hile looking only to Dr. Jones' evaluations, it would be easy to infer that the claimant has significant psychological limitations, the results of Dr. Jones' testing and her opinions are not supported by the record as a whole." [*Id.*]. The ALJ detailed that Dr. Craig's treatment records displayed that Plaintiff was consistently doing well on medication, and her mood would quickly stabilize after occasional increased anxiety or depression related to external family stressors. [*Id.*]. Lastly, the ALJ pointed to Dr. Raphaeli's opinions as conflicting with Plaintiff's claims of disabling limitations. [*Id.*].

"Despite the linguistic clarification, courts continue to rely on pre-SSR 16-3p authority providing that the ALJ's credibility determinations are given great weight." *Getz v. Comm'r of Soc. Sec.*, No. CV 18-11625, 2019 WL 2710053, at *3–4 (E.D. Mich. June 10, 2019), *report and recommendation adopted by*, 2019 WL 2647260 (E.D. Mich. June 27, 2019) (citing *Kilburn v. Comm'r of Soc. Sec.*, No. 1:17-CV-603, 2018 WL 4693951, at *7 (S.D. Ohio Sept. 29, 2018); *Duty*

26

*v. Comm'r of Soc. Sec.*, No. 2:17-CV-445, 2018 WL 4442595, at *6 (S.D. Ohio Sept. 18, 2018)).

First, the Court finds that Plaintiff fails to point to any evidence in the medical record or supporting case law that would require the ALJ to consider the potential plateauing of her condition. The language of Social Security Ruling 16-3p regarding whether the claimant has "reached a plateau" is in the context of utilizing available treatments. *See Michael R. v. Saul*, No. 18 CV 50217, 2019 WL 4014203, at *7 (N.D. Ill. Aug. 26, 2019) (finding the ALJ failed to analyze whether the plaintiff's condition had reached a plateau where the ALJ concluded that the plaintiff's treatment was too limited to support his allegations, as "[t]he ALJ has not established that more visits or different treatments would have changed anything"). However, in the present case, the ALJ relied upon Dr. Jones' recommendation that Plaintiff obtain a brain MRI and psychological testing. [Tr. 32]. Plaintiff has also failed to point to evidence "expressly linking" her noncompliance with Dr. Jones' recommendation to any mental disorder. *See Borden v. Comm'r of Soc. Sec.*, No. 5:20-CV-1391, 2021 WL 3492105 (N.D. Ohio Aug. 9, 2021).

Next, the Court finds that the ALJ appropriately detailed how Dr. Craig's treatment records were inconsistent with Plaintiff's disabling complaints due to her mental limitations. The Court has previously found that the ALJ properly characterized these treatment records and Dr. Raphaeli's opinions in the RFC determination. *See, e.g.*, *Christian v. Comm'r of Soc. Sec.*, No. 3:20-cv-1617-JDG, 2021 WL 3410430, at *17 (N.D. Ohio Aug. 4, 2021) ("The ALJ referenced Christian's allegations and then contrasted them with the medical evidence, including examination findings, as well as the opinion evidence . . . Reading the decision as a whole, it is clear why the ALJ did not accept the entirety of Christian's allegations.").

Therefore, the ALJ's decision regarding the intensity, persistence, and limiting effects of Plaintiff's symptoms was within the ALJ's discretion. *See Ritchie v. Comm'r of Soc. Sec.*, 540 F.

App'x 508, 511 (6th Cir. 2013) (recognizing that the Sixth Circuit holds the ALJ's credibility findings to be virtually "unchallengeable") (internal citations omitted). An ALJ's findings on credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Here, the Court finds that the ALJ appropriately reviewed the intensity, persistence and limiting effects of Plaintiff's symptoms pursuant to SSR 16-3p. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713–14 (6th Cir. 2012) ("As long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess."). Accordingly, the Court finds that the ALJ's finding that the objective record evidence did not support Plaintiff's claims of disabling limitations is supported by substantial evidence. The ALJ was not required to adopt Plaintiff's testimony in full, and the ALJ appropriately detailed his reasoning for finding that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record.

## VI.  CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings [**Doc. 13**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 16**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge